REICHEL v. DORSET.

(Court of Appeals of District of Columbia. Submitted November 14, 1919. Decided January 5, 1920.)

No. 1261.

1. PATENTS ⚙︎≈90(5)—OBTAINING HOG CHOLERA PRODUCT WITHOUT TESTING NOT A REDUCTION TO PRACTICE.

Merely obtaining an improved hog cholera product, without testing it by immunizing a hog, does not constitute a reduction to practice.

2. PATENTS ⚙︎≈90(4, 5)—FAILURE TO APPRECIATE PATENTABILITY NO EXCUSE FOR NOT REDUCING TO PRACTICE OR APPLYING FOR PATENT.

Failure to appreciate the patentability of an invention does not excuse either failure to reduce it to practice or making timely application for letters patent.

3. PATENTS ⚙︎≈91(4)—DUE DILIGENCE NOT SHOWN IN REDUCING TO PRACTICE.

Evidence that a party to patent interference proceedings did not test and reduce to practice his improved hog cholera preparation until a year after he had obtained the product *held* to show, contrary to the Assistant Commissioner's finding, that he had not proceeded with due diligence.

Appeal from a Decision by the Assistant Commissioner of Patents.

Interference proceeding in the Patent Office between John Reichel and Marion Dorset. From a decision for Dorset, Reichel appeals. Reversed.

L. H. Campbell, of New York City, for appellant.
C. W. Boyle and A. J. Decker, both of Washington, D. C., for appellee.

VAN ORSDEL, Associate Justice. The issue in this interference is in four counts, of which counts 1 and 3 are illustrative:

"1. The process of eliminating, from hog cholera 'antitoxin,' the serum albumins, cellular débris fibrin, or living or dead germs by precipitation with chemical precipitants other than those forming insoluble hydroxides and filtration and preserving only the active substances whereby the hog cholera immune bodies and the globulins are obtained, having the characteristics of increasing the resistance of the hog against infection from hog cholera virus or the cause of hog cholera, and adapted to be used either alone or in connection with hog cholera virus or the cause of hog cholera to prevent the disease known as hog cholera in healthy hogs or to cure hogs sick of hog cholera."

"3. As a new substance hog cholera globulin, consisting only of the hog cholera immune bodies and the globulins obtained from hog cholera defibrinated blood antitoxin, having the active substance in concentrated and sterile form."

The invention relates to a process for refining antitoxin for hog cholera and the produce thereby obtained.

The respective dates found by the tribunals below are fully sustained by the record. Appellant, Reichel, conceived the invention October 15, 1913, and constructively reduced it to practice by filing his application April 3, 1914. Dorset conceived the invention in the latter

⚙︎≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

part of 1912, obtained a product in May, 1913, which was tested and reduced to practice May 16, 1914. The reduction to practice consisted in Dorset sending some of the defibrinated blood antitoxin to Dr. Schroeder at the experiment station at Bethesda, Md., where it was tested by immunizing a hog, and was found to be potent in preventing cholera. Dorset filed his application for patent August 5, 1915.

[1] We are of the opinion that the mere obtaining of the product by Dorset in May, 1913, without a test of its potency by immunizing a hog, does not amount to a reduction to practice. The invention is an important step in a difficult art, and therefore nothing short of a successful test could meet the legal requirements of a reduction to practice.

[2, 3] The diligence of appellee at the time appellant entered the field is the sole question in the case. The Examiner of Interferences held that Dorset was lacking in diligence, and awarded priority to Reichel. He was reversed by the Board of Examiners in Chief and the Assistant Commissioner. Dorset's excuse for his inactivity from May, 1913, to May, 1914, is pressing official duties. He was chief of the Biochemic Division of the Bureau of Animal Industry of the Department of Agriculture. In March, 1913, Congress passed an act requiring the Agricultural Department to inspect all plants producing hog cholera serum and other veterinary biological products. All the field work in connection with this inspection was assigned to Dorset, and he claims that, inasmuch as he was working under orders as a government official, he was not at liberty to lay aside his assigned work and devote his time to testing his invention.

The validity of this sort of excuse depends entirely upon the facts and circumstances of the instant case. If he had perfected the product, as he claims, it would seem that, without any material loss of time or interference with his official duties, he could have done in May, 1913, what he did in May, 1914—send some of the perfected defibrinated blood antitoxin to Dr. Schroeder, at Bethesda, Md., and have it tested.

But the record discloses circumstances which, we think, point more accurately to the real cause of appellee's delay. He did not think the process patentable until Reichel visited his office in May, 1915, and told him that a patent had been allowed on his application. Dorset then caused a protest to be filed against the issuance of the patent, and shortly thereafter filed his application. This resulted in a withdrawal of Reichel's case from issue and the declaration of this interference.

Failure to appreciate the patentability of an invention is no excuse, either for failure to reduce it to practice or to make timely application for letters patent. Dorset allowed one year to elapse between his alleged perfecting of the product and its reduction to practice, during which time Reichel conceived the invention and constructively reduced it to practice by filing his application in the Patent Office. Another year of inactivity on Dorset's part elapsed, until he discovered the allowance of the patent to his rival, when, spurred to activity, he entered his protest and filed his application. While the delay in filing,

654      262 FEDERAL REPORTER

had he been diligent in reducing to practice, would not have barred his right to priority, it is a circumstance strongly indicating that lack of appreciation of the patentability of the invention was the real cause of his inactivity, when the law required diligence.

The invention in issue was a development of the work in which Dorset was officially engaged. The government was deeply interested in a discovery which would effectually aid it in its war upon a destructive disease; hence, considering the relation of Dorset to the public service, the delay of one year in sending the product to Dr. Schroeder for test is totally inexcusable.

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required.

Reversed.